IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

CASE NO. 2015-CA-886

DAVID W. SCHWARZ, an individual;

    Plaintiff *pro se*,

v.

THE SECURITIES AND EXCHANGE COMMISSION;
ERIC I. BUSTILLO, an individual;
JASON R. BERKOWITZ, an individual;
LINDA S. SCHMIDT, an individual;
AMIE R. BERLIN, an individual;
FERNANDO TORRES, an individual,

    Defendants.

_____/

## I: COMPLAINT FOR DEFAMATION

Plaintiff *pro se* David W. Schwarz ("Schwarz") alleges as follows:

## II: INTRODUCTION

1. On Jan. 30, 2013, the Securities and Exchange Commission, (the "SEC") along with Eric I. Bustillo, Jason R. Berkowitz, Linda S. Schmidt, Amie R. Berlin and Fernando Torres (collectively, the "Defendants"), issued a press release (the "Press Release") accusing Schwarz, and others, of a multitude of egregious offenses, including the perpetration of a $300-million Ponzi-scheme.

2. The Press Release included a direct link to another SEC website page containing the full text of the SEC's 90-paragraph civil complaint (the "SEC Complaint"), which was filed concurrent with the Press Release.

3. The Press Release contains numerous false statements.

4. Defendants' statements, as they pertain to the Press Release, were unprivileged.

5. The SEC Complaint contains numerous false allegations.

6. By posting the SEC Complaint on their website and directly linking it from the Press Release, Defendants waived any claim of privilege as it pertains to the SEC Complaint.

7. Multiple newspapers, television stations and other national media outlets prominently published, aired, and otherwise disseminated the contents of the Press Release, on an international level, to millions of people.

8. Defendants' false statements, which accuse Schwarz of committing numerous crimes and engaging in improper behavior in connection with his business, constitute defamation *per se*.

9. Defendants' carefully-crafted Press Release, which blatantly and falsely implies Schwarz committed numerous crimes and engaged in improper behavior in connection with his business, constitutes defamation by implication.

10. Defendants' defamatory statements and implications were intentional and malicious, or in the alternative negligent, and Defendants knew, or should have known, the statements were false.

11. As a direct result of Defendants' defamatory statements and implications, Schwarz has sustained complete and irreparable damage to his reputation and standing, thereby destroying his ability to make a living in any of his fields of expertise.

12. As a direct result of Defendants' defamatory statements and implications, Schwarz has suffered shame, mental anguish, personal humiliation, hurt feelings, mental suffering, and injury to reputation and health, all of which are continuing and permanent in nature.

13. Schwarz is entitled to punitive damages as the above defamatory statements and implications:

    a. were made maliciously, willfully, wantonly, and with a reckless disregard for Schwarz's rights;

    b. were made primarily to indulge ill will and hostility, with an intent to harm Schwarz; and

    c. were made deliberately and improperly, and brought the full power and might of the federal government against an innocent citizen in order to advance the careers, personal agendas, desire for publicity, expansion of jurisdiction, and/or other self-serving goals of Defendants.

### III: JURISDICTION AND VENUE

14. This Court has jurisdiction, as this is an action involving damages in excess of the minimum jurisdictional limits of this Court.

15. Venue is proper in that Schwarz resides in, and suffered extreme injury in, Orange County, Florida, as a direct result of the Press Release, which originated out of Washington, D.C., and which was then subsequently published to millions of people around the world, including persons in Orange County, Florida, through local media outlets. Furthermore, Defendants have, and continue to, conduct operations within this judicial district.

### IV: THE PARTIES

16. David W. Schwarz, an individual, is 58 and resides in Orlando, Florida.

17. The Securities and Exchange Commission is a federal agency.

18. Eric I. Bustillo, an individual, associated himself with the Press Release as the Director of the SEC's Miami Regional Office.

19. Jason R. Berkowitz, an individual, associated himself with the Press Release as the SEC Assistant Regional Director who supervised the investigation of Schwarz.

20. Linda S. Schmidt, an individual, associated herself with the Press Release as the SEC Senior Counsel who co-conducted the investigation of Schwarz.

21. Fernando Torres, an individual, associated himself with the Press Release as the SEC Senior Regional Accountant who co-conducted the investigation of Schwarz.

22. Amie R. Berlin, an individual, associated herself with the Press Release as the SEC Senior Trial Counsel for the SEC's litigation.

### V: BACKGROUND

#### a. Procedural

23. Defendants' defamatory statements relate to a group of real estate, hospitality and ancillary businesses collectively known as Cay Clubs Resorts and Marinas ("Cay Clubs"), of which Schwarz was a principal.

24. On January 30, 2013, Defendants issued the Press Release. **(Exhibit 1)**

25. On February 4, 2013, Defendants filed their First Amended Complaint.[1]

26. Concurrent with the filing of the Press Release, Defendants filed the SEC Complaint in the U.S. Southern District Court against Schwarz and four other individuals affiliated with Cay Clubs. **(Exhibit 2)**

27. On July 10, 2013, the U.S. Southern District Court dismissed the SEC's [First Amended] Complaint without prejudice. **(Exhibit 3)**

28. On July 30, 2013, Defendants filed their Second Amended Complaint. **(Exhibit 4)**

29. On June 11, 2014, the U.S. Southern District Court rendered Final Judgment on the Second Amended Complaint in favor of Schwarz, and the other defendants. **(Exhibit 5)**

30. Defendants appealed the Final Judgment and, on November 14, filed their Initial (Corrected) Brief of Appellant with the Eleventh Circuit U.S. Court of Appeals. **(Exhibit 6)**

31. The Appeal is currently pending.

### b. General concepts

32. The SEC is the federal agency charged with enforcing the federal securities laws.

33. The SEC has no jurisdiction over, nor do the securities laws apply to, real estate transactions, except under *very narrow, specific circumstances* where the real estate transactions are merely incidental to an overall investment contract.

34. The contractual requirements, disclosure obligations and business practices related to real estate sales are different from, and often in opposition to, federal securities laws.

35. At no time were Cay Clubs real estate operations ever *merely incidental* to an overall investment contract.

36. Despite Cay Clubs' lawful real estate operations, Defendants arbitrarily and brazenly asserted that Cay Clubs' real estate sales activities were, in actuality, security transactions.

37. To advance their unjustified assertions, Defendants concocted a deliberate, malicious and coordinated attack against Schwarz, and others, by baselessly alleging:

    a. Cay Clubs' customers were "investors";

---

[1] The only change effected by the First Amended Complaint was to move a cited Securities Act violation from the Count III allegations and regroup it with the Count II allegations.

  b. the proceeds Cay Clubs' earned from the sale of real estate were "funds", "investor funds" or "investment funds";

  c. the contractually-obligated leaseback and property management remittances paid by Cay Clubs to its customers were "returns" or "investment returns";

  d. Cay Clubs' real estate marketing materials were "investor solicitations"; and

  e. Cay Clubs' payment of ordinary and necessary business expenses, including such things as salaries, construction expenditures, utilities and the like, were "misappropriation[s]", "misuse[s]" and "dissipation[s]" of "investor funds".

38. As part of their coordinated attack, Defendants issued the Press Release to cast Schwarz, and others, in a false light, with a goal of creating prejudice and ill will, for the sole purpose of advancing the private agendas of the Defendants.

## VI  SPECIFIC DEFAMATORY STATEMENTS

39. The specific defamatory statements against Schwarz are more particularly described in ¶¶40 – 51 as follows:

40. The Press Release statement, "The Securities and Exchange Commission today charged five former real estate executives who defrauded investors into believing they were funding the development of five-star destination resorts in Florida and Las Vegas when they were actually buying into a Ponzi scheme" contains false, defamatory, and defamatory by implication assertions, more specifically:

  a. Defendants did not charge Schwarz, or others, with operating a Ponzi scheme; at best, the SEC Complaint utilizes the phrase, "in Ponzi scheme fashion", but deliberately does not allege a Ponzi scheme;

  b. Defendants' assertion that Cay Clubs' customers were "investors" is a deliberate misclassification and, when taken in context, constitutes defamation by implication;

  c. Defendants' assertion that Cay Clubs "defrauded" its customers is false and defamatory per se;

  d. Defendants' assertion that Cay Clubs told its customers that the customers would be "funding the development of five-star destination resorts" is a deliberate distortion and, when taken in context, constitutes defamation by implication; and

  e. Defendants' deliberate construction of this sentence removes the notion that the statement is an allegation or opinion, and instead presents the statement as fact by characterizing Schwarz, and others, as "executives who defrauded investors" rather than stating Schwarz, and others, were charged with, or were alleged to have, defrauded investors; this intentional obfuscation makes the statement defamatory by implication.

41. The Press Release statement, "Investors were promised immediate income from a guaranteed 15 percent return and a future income stream through a rental program that Cay Clubs managed" contains false, defamatory, and defamatory by implication assertions, more specifically:

  a. Defendants' assertion that Cay Clubs' customers were "investors" is a deliberate misclassification, and when taken in context, constitutes defamation by implication;

  b. Defendants' assertion that Cay Clubs' leaseback payments were "returns" is a deliberate misclassification, and when taken in context, constitutes defamation by implication; and

  c. Defendants' assertion that Cay Clubs leaseback offerings, most of which were calculated at 15% of the purchase price, constitutes a "promised immediate income from a guaranteed 15% return" is a deliberate misclassification which, when taken in context, constitutes defamation by implication.

42. The Press Release statement, "But instead of using investor funds to develop resort properties and units, the Cay Clubs executives used new investor deposits to pay leaseback returns to earlier investors" contains false, defamatory, and defamatory by implication assertions, more specifically:

  a. Defendants' assertion that Cay Clubs' customers were "investors" is a deliberate misclassification, and when taken in context, constitutes defamation by implication;

  b. Defendants' assertion that Cay Clubs' past customers were "earlier investors" is a deliberate misclassification, and when taken in context, constitutes defamation by implication;

  c. Defendants' assertion that Cay Clubs' proceeds from the sale of real estate were "investor funds" is a deliberate misclassification, and when taken in context, constitutes defamation by implication;

  d. Defendants' assertion that Cay Clubs' leaseback payments were "returns" is a deliberate misclassification, and when taken in context, constitutes defamation by implication;

  e. Defendants assertion that Cay Clubs was required to devote the proceeds from the sale of real estate to "develop resort properties and units", is false, and when taken in context, constitutes defamation by implication; the proceeds from the sale of real estate represented unrestricted cash, which Cay Clubs was free to use in any legitimate manner it saw fit in the operation of its business; and

  f. the assertion that Schwarz, and others, used "deposits" to pay leasebacks is false and defamatory per se; all of Cay Clubs contract deposits were deposited in escrow with independent attorneys and closing agents, and neither Schwarz, nor any other Cay Clubs principal or employee, ever had access to, or utilized, contract deposits.

43. The Press Release statement, "Meanwhile they paid themselves exorbitant salaries and commissions totaling more than $30 million, and investor funds also were misused to buy airplanes and boats" contains false, defamatory, and defamatory by implication assertions, more specifically:

  a. Defendants' assertion that Cay Clubs' proceeds from the sale of real estate were "investor funds" is a deliberate misclassification, and when taken in context, constitutes defamation by implication;

  b. Defendants' assertion that Cay Clubs' proceeds from the sale of real estate were "misused" is false and defamatory per se;

  c. Defendants' assertion that salaries and commissions paid to Schwarz, and others, exceeded more than $30 million is false, and when taken in context, constitutes defamation by implication;

  d. Defendants assertion that payment of salaries and commissions was a "misuse" of Cay Clubs funds, is false and constitutes defamation per se; and

  e. Defendants assertion that Schwarz, and others, "misused" Cay Clubs funds to purchase airplanes and boats for his/their own benefit, is false and defamatory per

se, as well as defamatory by implication; the airplanes and boats referenced by Defendants were all purchased by Cay Clubs and used directly in Cay Clubs' businesses, primarily as charter vessels and transport.

44. The Press Release statement, "While still advertising itself as a profitable venture, Cay Clubs eventually abandoned its operations" is false, and when taken in context, constitutes defamation by implication.

45. The Press Release statement, "'These Cay Clubs executives lined their pockets with millions of dollars that they told investors would be used to develop five-star resort properties,' said Eric I. Bustillo, Director of the SEC's Miami Regional Office" contains false, defamatory, and defamatory by implication assertions, more specifically:

   a. Defendants' assertion that Cay Clubs' customers were "investors" is a deliberate misclassification, and when taken in context, constitutes defamation by implication;

   b. Defendants' assertion that Schwarz, and others, improperly disbursed funds for their own personal use is false and defamatory per se;

   c. Defendants' implied assertion that Cay Clubs' proceeds from a specific sale of real estate were required to be devoted to any specific use is false, and when taken in context, constitutes defamation by implication;

   d. Defendants' assertion that Cay Clubs represented to prospective buyers that proceeds from the sale of specific real estate would be "used to develop five-star properties" is false and, when taken in context, constitutes defamation by implication;

   e. Defendants' implied assertion that Cay Clubs did not develop any of its properties into "five-star resort properties" is false and, when taken in context, constitutes defamation by implication; Cay Clubs operated at least four "five-star resort properties"; and

   f. Defendants' implied assertion that Cay Clubs did not spend any money developing its properties is false and, when taken in context, constitutes defamation by implication; Cay Clubs expended tens of millions of dollars to develop and improve its properties, and tens of millions of dollars developing and advancing its

amenities, hospitality services, and property management businesses, which supported its resorts.

46. In addition to being false, as explained in ¶45 above, the Press Release statement, "'These Cay Clubs executives lined their pockets with millions of dollars that they told investors would be used to develop five-star resort properties,' said Eric I. Bustillo, Director of the SEC's Miami Regional Office" clearly demonstrates the malicious intent of Defendants, to wit:

    a. in addition to being false, this statement deliberately and maliciously employs the contrived and highly-inflammatory phrase, "These executive lined their pockets", for the sole purpose of defaming Schwarz, and others, with the express intention of creating prejudice and ill will, and inflicting harm;

    b. in addition to being false, this statement deliberately and maliciously magnifies the ill will and obloquy directed at Schwarz, and others, by presenting it as an unequivocal, scathing denunciation from a respected office, i.e., the Regional Director of the SEC;

    c. in addition to being false, Defendants deliberately attempt to add credence and validity to a mere allegation by couching it within the context of an unqualified quote, with the sole intention of destroying any notion that it should be construed as an allegation; and

    d. this carefully crafted false statement clearly demonstrates Defendants' premeditation, maliciousness and desire to do damage.

47. The Press Release statement, "'They continued to defraud investors as Cay Clubs collapsed.'" contains false, defamatory, and defamatory by implication assertions, more specifically:

    a. Defendants' assertion that Cay Clubs' customers were "investors" is a deliberate misclassification, and when taken in context, constitutes defamation by implication;

    b. Defendants' assertion that Cay Clubs defrauded anyone is false and defamatory per se; and

    c. Defendants' assertion that Cay Clubs continued to "defraud" its customers for some extended period of time after Cay Clubs halted operations is false and defamatory per se.

48. In addition to being false, as explained in ¶47 above, the Press Release statement, "'They continued to defraud investors as Cay Clubs collapsed.'" clearly demonstrates the malicious intent of Defendants, to wit:

   a. in addition to being false, this statement deliberately and maliciously magnifies the ill will and obloquy directed at Schwarz, and others, by presenting it as an unequivocal, scathing denunciation from a respected office, i.e., the Regional Director of the SEC;

   b. in addition to being false, Defendants deliberately attempt to add credence and validity to a mere allegation by couching it within the context of an unqualified quote, with the sole intention of destroying any notion that it should be construed as an allegation; and

   c. this carefully crafted false statement clearly demonstrates Defendants' premeditation, maliciousness and desire to do damage.

49. The Press Release statement, "According to the SEC's complaint, the scheme began in 2004." is defamatory by implication; Cay Clubs never operated a "scheme".

50. The Press Release statement, "Clark, Coleman, and Schwarz misappropriated millions of dollars in investor funds using the multitude of bank accounts they controlled" contains false, defamatory, and defamatory by implication assertions, more specifically:

   a. Defendants' assertion that Cay Clubs' customers were "investors" is a deliberate misclassification, and when taken in context, constitutes defamation by implication;

   b. Defendants' assertion that Schwarz, and others, "misappropriated" any funds is false and defamatory per se; and

   c. Defendants' assertion that Schwarz, and others, utilized a "multitude of bank accounts they controlled" to misappropriate funds is defamatory by implication; Cay Clubs "multitude" of bank accounts resulted from the structure of Cay Clubs in the normal course of business; furthermore, virtually all payments to Cay Clubs principals were made from a single account.

51. The Press Release statement, "Besides purchasing airplanes and boats, they misused investor money for unrelated business ventures including investments in precious metals and a

liquor distillery that produced Pirate's Choice Rum" contains false, defamatory, and defamatory by implication assertions, more specifically:

    a. Defendants' assertion that Cay Clubs' customers were "investors" is a deliberate misclassification, and when taken in context, constitutes defamation by implication;

    b. the assertion that Schwarz, or others, ever "misused" money is false and defamatory per se;

    c. Defendants assertion that that Schwarz, and others, used Cay Clubs funds to purchase airplanes and boats for his/their own benefit, is a deliberate misrepresentation, and when taken in context, constitutes defamation by implication; all airplanes and boats purchased by Cay Clubs were used directly in Cay Clubs businesses, primarily as charter vessels and transport; and

    d. Defendants assertion that Cay Clubs was required to devote its business cash to purposes other than "unrelated business ventures", is false, and when taken in context, constitutes defamation by implication; Cay Clubs' principals, which included Schwarz, were free to apply Cay Clubs' cash to any legitimate purpose they saw fit.

### VII COUNT I
### LIBEL *PER SE*

52. Schwarz re-alleges and incorporates paragraphs 1 through 51 of this Complaint as if set forth in full herein.

53. Defendants made numerous false and defamatory statements concerning Schwarz.

54. The defamatory statements were contained in the Press Release of January 30, 2013, as well as in the SEC Complaint, which Defendants specifically referenced and linked in the Press Release.

55. Defendants made the Press Release public to third parties including ABC News, CBS News, NBC News, Fox News, MSNBC, the Wall Street Journal, the Orlando Sentinel, the Miami Herald, the Tampa Bay Times, and numerous newspapers from around the world as well as countless other outlets.

56. At the time of making the statements, Defendants knew, or should have known, the statements were false.

57. Defendants' defamatory statements accuse Schwarz of committing multiple crimes.

58. Defendants' defamatory statements accuse Schwarz of conduct and characteristics incompatible with the proper exercise of his lawful business.

59. Defendant's defamatory statements are a direct attack on Schwarz's professional character, reputation and standing.

60. Defendants' defamatory statements constitute defamation per se.

61. Defendants' defamatory statements were intentional and malicious; in the alternative, they were negligent.

62. Defendants' defamatory statements subjected Schwarz to hatred, distrust, ridicule, obloquy, contempt, and disgrace.

63. As a direct and proximate result of Defendants' defamatory statements, Schwarz sustained direct and indirect pecuniary loss including, but not limited to, lost earnings, lost working time, lost business opportunities, loss of reputation, loss of personal growth, and loss of the ability to earn income.

64. In addition, Schwarz sustained shame, mental anguish, personal humiliation, hurt feelings, mental suffering, and injury to reputation and health.

65. The damages detailed in ¶¶62 - 64 above are continuing and permanent in nature.

66. Schwarz is entitled to punitive damages as the above defamatory statements:

   a. were made maliciously, willfully, wantonly, and with a reckless disregard for Schwarz's rights;

   b. were made primarily to indulge ill will and hostility, with an intent to harm Schwarz; and

   c. were made deliberately and improperly, and brought the full power and might of the federal government against an innocent citizen in order to advance the careers, personal agendas, desire for publicity, expansion of jurisdiction, and other self-serving goals of Defendants.

67. WHEREFORE Schwarz sues Defendants for compensatory and punitive damages in excess of the minimum jurisdictional limits of this Court, plus costs, interest, and all other damages to which Schwarz may be entitled.

## VIII  COUNT II
## DEFAMATION BY IMPLICATION

68. Schwarz re-alleges and incorporates paragraphs 1 through 51 of this Complaint as if set forth in full herein.

69. Defendants made numerous statements concerning Schwarz, which were defamatory by implication.

70. These statements were contained in the Press Release of January 30, 2013, as well as in the SEC Complaint, which Defendants specifically referenced and linked in the Press Release.

71. Defendants made the Press Release public to third parties including ABC News, CBS News, NBC News, Fox News, MSNBC, the Wall Street Journal, the Orlando Sentinel, the Miami Herald, the Tampa Bay Times, numerous newspapers from around the world, and countless other outlets.

72. At the time of making these statements, Defendants knew, or should have known, the statements were defamatory by implication.

73. Defendants' statements imply Schwarz committed multiple crimes.

74. Defendants' statements imply that Schwarz was guilty of conduct and characteristics incompatible with the proper exercise of his lawful business.

75. Defendants' defaming implications were a direct attack on Schwarz's professional character, reputation and standing.

76. Defendants' defaming implications were intentional and malicious; in the alternative, they were negligent.

77. Defendants' defaming implications subjected Schwarz to hatred, distrust, ridicule, obloquy, contempt, and disgrace.

78. As a direct and proximate result of Defendants' defaming implications, Schwarz sustained direct and indirect pecuniary loss including, but not limited to, lost earnings, lost working time, lost business opportunities, loss of reputation, loss of personal growth, and loss of the ability to earn income.

79. In addition, Schwarz sustained shame, mental anguish, personal humiliation, hurt feelings, mental suffering, and injury to reputation and health.

80. The damages detailed in ¶¶77 - 79 above are continuing and permanent in nature.

81. Schwarz is entitled to punitive damages as the above defaming implications:

  a. were made maliciously, willfully, wantonly, and with a reckless disregard for Schwarz's rights;

  b. were made primarily to indulge ill will and hostility, with an intent to harm Schwarz; and

  c. were made deliberately and improperly, and brought the full power and might of the federal government against an innocent citizen in order to advance the careers, personal agendas, desire for publicity, expansion of jurisdiction, and other self-serving goals of Defendants.

82. WHEREFORE Schwarz sues Defendants for compensatory and punitive damages in excess of the minimum jurisdictional limits of this Court, plus costs, interest, and all other damages to which Schwarz may be entitled.

## IX  DEMAND FOR JURY TRIAL

83. Schwarz demands a jury trial on all issues herein triable by jury.

Respectfully submitted this 29th day of January 2015.

_[signature]_

David W. Schwarz, Plaintiff